1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  LLOYD FARNHAM (CABN 202231)
   SARAH K. HAWKINS (CABN 257723)
5  J. DOUGLAS WILSON (DCBN 412811)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-6973
8       FAX: (415) 436-7027
        Lloyd.Farnham@usdoj.gov
9
   Attorneys for United States of America
10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  UNITED STATES OF AMERICA,              Case No. 13-CR-753 EMC

16          Plaintiff,                     **UNITED STATES' MOTION SEEKING
                                           RULING ON DEFENDANTS' CLAIM
17      v.                                 THAT THE GOVERNMENT ENGAGED
                                           IN SELECTIVE ENFORCEMENT AND
18  IVAN SPEED,                            SELECTIVE PROSECUTION**

19          Defendant.

20  UNITED STATES OF AMERICA,              Case No. 14-CR-643 EMC

21          Plaintiff,

22      v.

23  DAVID MADLOCK and MATTHEW
    MUMPHRY,
24          Defendants.

25  UNITED STATES OF AMERICA,              Case No. 15-CR-004 EMC

26          Plaintiff,

27      v.

28  LATONYA CAREY,
            Defendant.

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

CRYSTAL ANTHONY,

     Defendant.

Case No. 15-CR-005 EMC

---

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

DARELL POWELL,

     Defendant.

Case No. 15-CR-006 EMC

---

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

DARLENE ROUSE,

     Defendant.

Case No. 15-CR-027 EMC

---

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

ACACIA McCNEAL,

     Defendant.

Case No. 15-CR-028 EMC

---

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

ANITA DIXON and ERWIN MACKEY,

     Defendants.

Case No. 15-CR-043 EMC

---

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

ERWIN MACKEY,

     Defendant.

Case No. 15-CR-138 EMC

---

UNITED STATES' MOTION
CASE NO. 13-CR-753 EMC

1   UNITED STATES OF AMERICA,                  Case No. 15-CR-049 EMC

2          Plaintiff,

3      v.

4   AARON MATHEWS,

          Defendant.

5

6   UNITED STATES OF AMERICA,                  Case No. 15-CR-050 EMC

          Plaintiff,

7      v.

8   NIJAH REED,

9          Defendant.

10  UNITED STATES OF AMERICA,                  Case No. 15-CR-052 EMC

11         Plaintiff,

12     v.

    TIANA REDDIC,

13         Defendant.

14

15  UNITED STATES OF AMERICA,                  Case No. 15-CR-059 EMC

          Plaintiff,

16     v.

17  TIFFANY CROSS,

          Defendant.

18

19  UNITED STATES OF AMERICA,                  Case No. 15-CR-070 EMC

20         Plaintiff,

21     v.

22  SHOLANDA ADAMS,

          Defendant.

23

24

25

26

27

28

UNITED STATES' MOTION
CASE NO. 13-CR-753 EMC

1

# TABLE OF CONTENTS

2 BACKGROUND ..................................................................................................................1

3 ARGUMENT ......................................................................................................................2

4 I.       Selective enforcement may only be brought in a civil case ...............................2

5 II.      No selective prosecution occurred. ....................................................................6

6        A.       The declarations from the AUSAs ...........................................................6

7        B.       The standards governing selective prosecution claims ............................7

8        C.       Application of the standards .....................................................................9

9 CONCLUSION .................................................................................................................11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FEDERAL CASES**

*Ayers v. Belmontes,* 549 U.S. 7 (2006) ................................................................................................ 9

*Belmontes v. Brown*, 414 F.3d 1094 (9th Cir. 2005), ......................................................................... 9

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) .................................................................................... 8

*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2011) ............................................................ 10

*Heckler v. Chaney*, 470 U.S. 821 (1985) ............................................................................................ 7

*Herring v. United States*, 555 U.S. 135 (2009) .................................................................................. 5

*Hudson v. Michigan*, 547 U.S. 586 (2006) ................................................................................... 3, 5

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012) .......................................................................................... 3

*McCleskey v. Kemp*, 481 U.S. 279 (1987) .......................................................................................... 5

*Oyler v. Boles*, 368 U.S. 448 (1962) ................................................................................................. 8

*United States v. Alcaraz-Arellano*, 441 F.3d 1252 (10th Cir. 2006) .................................................. 4

*United States v. Arenas-Ortiz*, 339 F.3d 1066 (9th Cir. 2003) ........................................................... 7

*United States v. Armstrong*, 517 U.S. 456 (1996) ..................................................................... 7, 8, 9

*United States v. Avery*, 137 F.3d 343 (6th Cir. 1997) ........................................................................ 5

*United States v. Barlow*, 310 F.3d 1007 (7th Cir. 2002) ................................................................... 4

*United States v. Barrett*, 2011 WL 4443432 .................................................................................... 5

*United States v. Bass*, 536 U.S. 862(2002) ( ................................................................................... 8

*United States v. Burford*, 632 F.3d 264 (6th Cir. 2011) ..................................................................... 2

*United States v. Chavez*, 281 F.3d 479 (5th Cir. 2002) ...................................................................... 4

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) ......................................................... 8

*United States v. Davis*, 766 F.3d 722 (7th Cir. 2014) ...................................................................... 10

*United States v. Duque-Nava*, 315 F. Supp. 2d 1144 (D. Kan. 2004) ................................................ 10

*United States v. Foster*, 2008 WL 1927392 (M.D. Ala. 2008) ...................................................... 2, 5

*United States v. Frazier*, 408 F.3d 1102 (8th Cir. 2005) ................................................................... 5

*United States v. Gomez-Lopez*, 62 F.3d 304 (9th Cir.1995) ............................................................. 11

*United States v. Harmon*, 785 F. Supp. 2d 1146 (D.N.M. 2011) ....................................................... 2

*United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997) ................................................................. 10

1    *United States v. Ibarra*, 345 F.3d 711 (9th Cir. 2003)..................................................................... 4

2    *United States v. Monsoor*, 77 F.3d 1031, (7th Cir. 1996)............................................................ 11

3    *United States v. Morrison*, 449 U.S. 361 (1981) ........................................................................... 3

4    *United States v. Navarro-Camacho*, 186 F.3d 701 (6th Cir. 1999) ............................................ 4

5    *United States v. Nelson*, 137 F.3d 1094 (9th Cir. 1998) ............................................................... 8

6    *United States v. Nichols*, 512 F.3d 789 (6th Cir. 2008) ........................................................... 2, 4

7    *United States v. Park*, 2006 WL 3085701 (N.D. Cal. 2006) .................................................... 11

8    *United States v. Quintana*, 585 F.3d 1407 (11th Cir. 2009) ....................................................... 3

9    *United States v. Spears*, 159 F.3d 1081 (7th Cir. 1998) ........................................................... 10

10    *United States v. Starks*, 769 F.3d 83 (1st Cir. 2014)................................................................... 4

11    *United States v. Stoltz*, 720 F.3d 1127 (9th Cir. 2013) ............................................................... 3

12    *United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007) ............................................................ 7

13    *United States v. Tuitt*, 68 F. Supp. 2d 4 (D. Mass. 1999) ........................................................ 10

14    *United States v. Turner*, 104 F.3d 1180 (9th Cir. 1997) ................................................... 8, 9, 11

15    *United States v. Turrentine*, 2012 WL 729348 (W.D. Okla. 2012).......................................... 5

16    *United States v. Williams*, 431 F.3d 296 (8th Cir. 2005) ........................................................... 3

17    *Wayte v. United States*, 470 U.S. 598 (1985)........................................................................ 7, 8

18    *Whren v. United States*, 517 U.S. 806 (1996) ....................................................................... 2, 4

19    *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ................................................................................. 8

20    **FEDERAL STATUTES**

21    42 U.S.C. § 1983.............................................................................................................................. 2

1    The United States moves for a ruling that the defendants are not entitled to relief in these

2  criminal cases on any claim that law enforcement officers and prosecutors engaged in racial

3  discrimination in Operation Safe Schools.  First, to the extent that the defendants seek to show selective

4  enforcement by law enforcement officers, they must proceed by way of a civil action, not as part of a

5  criminal prosecution.  Selective enforcement does not support dismissal – or any other relief – in these

6  criminal actions.  Probable cause supports the prosecution of each of the defendants, and dismissing the

7  indictments against them would penalize blameless prosecutors and give the defendants an unjustified

8  windfall.  Second, to show racial discrimination in their prosecution, the defendants must show both

9  discriminatory effect and discriminatory intent.  To show discriminatory intent, the defendants must

10  establish that the decision to prosecute them was the result of racial discrimination on the part of a

11  prosecutor.  As set forth in the sworn declarations attached to this motion, however, the Assistant United

12  States Attorneys (AUSAs) who reviewed the evidence and who made the decision to prosecute the

13  defendants did not have a discriminatory intent.  Accordingly, the defendants cannot succeed on any

14  motion to the extent it shows selective prosecution.  For that reason, the Court should decide by way of

15  this motion to preclude the defendants from proceeding on either a selective enforcement or selective

16  prosecution claim.  Relief is particularly appropriate because of the extreme (and in the government's

17  view unnecessary) delay that the defendants are requesting and the burden that the defendants seek to

18  impose on the San Francisco Police Department and the Drug Enforcement Administration.

19                                          **BACKGROUND**

20    In their Notice of Related Cases, the defendants stated that they intended to file a motion to

21  dismiss based on "the evidence of selective enforcement and prosecution arising from Operation Safe

22  Schools."  Notice at 2.  In that Notice, the defendants assert that "it is not clear if the equal protection

23  violation arises from selective enforcement or selective prosecution."  In support of the Notice, however,

24  the defendants cite only evidence of actions by San Francisco Police Department (SFPD) officers and

25  Drug Enforcement Administration (DEA) agents; at no point do the defendants cite any alleged racial

26  discrimination on the part of the prosecutors who brought the cases.  Similarly, the defendants' Joint

27  Case Management Statement filed on July 2, 2015, makes clear that the defendants will argue that SFPD

28  officers and DEA agents engaged in selective enforcement of the defendants based on racial

1    discrimination.  Moreover, the Joint Case Management Statement expressly states that the defendants

2    will argue that they are entitled to dismissal of the indictments against them because of the alleged

3    selective enforcement of the SFPD and DEA.  *See* Defendants' Joint Case Management Statement at 13-

4    14; s*ee also* Declaration of Galia Amram Phillips in Response to Judge Breyer's April 15, 2015 Order

5    at ¶ 6.

6         In support of their planned motion to dismiss, the defendants have submitted a FOIA request to

7    DEA.  Declaration of Galia Amram Phillips in Response to Judge Breyer's April 15, 2015 Order at 6.  In

8    addition, the defendants have asked sociologists to conduct three studies: (a) "an ethnographic study of

9    the Tenderloin drug market"; (b) "a survey at the needle exchange in the Tenderloin neighborhood"; and

10   (c) "a statistical analysis of San Francisco drug arrest and court date."  Defendants' Joint Case

11   Management Statement at 3.  Apparently in support of that effort, the defendants have devised a "coding

12   protocol" for the drug cases investigated by the SFPD (and asked the United States to assist in funding

13   it).  *See id*.  Finally, according to a declaration, "[t]he defense is also investigating the evidence of racial

14   bias revealed in the San Francisco Police Department texts and at least one video of the Operation Safe

15   Schools investigation."  Declaration of Galia Amram Phillips in Response to Judge Breyer's April 15,

16   2015 Order at ¶ 7.

17                                              **ARGUMENT**

18   **I.    Selective enforcement may only be brought in a civil case**

19        The United States agrees that citizens are entitled to the protection of the Equal Protection

20   Clause at all times, and "the Constitution prohibits selective enforcement of the law based on

21   considerations such as race."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  As the Sixth Circuit

22   has specifically held, however, the proper remedy for a selective enforcement equal protection violation

23   is a civil action under 42 U.S.C. § 1983 against the officers, not a motion in a criminal case.  *United*

24   *States v. Nichols*, 512 F.3d 789, 794 (6th Cir. 2008), *overruled on other grounds as recognized by*

25   *United States v. Burford*, 632 F.3d 264 (6th Cir. 2011); *see United States v. Harmon*, 785 F. Supp. 2d

26   1146, 1170 (D.N.M. 2011) (quoting *Nichols* and finding that the appropriate remedy for a selective

27   enforcement equal protection violation is a civil action under 42 U.S.C. § 1983); *United States v. Foster*,

28   2008 WL 1927392, at *5 (M.D. Ala. 2008) ("the proper remedy for [the alleged selective enforcement]

violation is a 42 U.S.C. § 1983 action"); *see also Hudson v. Michigan*, 547 U.S. 586, 597-99 (2006) (finding civil action for Fourth Amendment knock-and-announce violation is exclusive remedy); *United States v. Williams*, 431 F.3d 296, 299-300 (8th Cir. 2005) (suggesting that dismissal is not proper remedy for racial profiling); *cf. United States v. Quintana*, 585 F.3d 1407, 1413 (11th Cir. 2009) (declining to consider whether dismissal an appropriate remedy for selective enforcement).

A selective enforcement claim rests on alleged violations of the Equal Protection Clause by law enforcement officers. In a federal court, a law enforcement officer does not make the decision to prosecute. Instead, as the declarations submitted with this motion show, an AUSA makes that decision based on the admissible evidence. *See* United States Attorney's Manual 2-27.220. Here, there is no dispute that probable cause (if not proof beyond a reasonable doubt) supports the defendants' drug sales, because each of the defendants was captured on videotape selling drugs.[1] Accordingly, allowing the defendants to pursue dismissal of their indictments based on the alleged racially discriminatory actions of law enforcement officers would penalize prosecutors for actions that did not result in the decision to prosecute the defendants in a federal prosecution and have no bearing on the defendants' guilt. At the same time, dismissing the criminal prosecutions for the law enforcement officers' alleged racial misconduct would give the defendants a windfall for conduct that plainly violates the drug statutes. Finally, dismissal would have a negative impact on the Tenderloin, because the defendants would suffer no consequences for selling drugs in that neighborhood. For these reasons, dismissal would not remedy alleged selective enforcement of the law enforcement officers and would carry a high societal cost for the Tenderloin. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (citing "the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests"); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) (remedy for constitutional violation should "not grant a windfall to the defendant"); *United States v. Stoltz*, 720 F.3d 1127, 1133 (9th Cir. 2013) (quoting *Morrison* and applying rule that remedies should be tailored to constitutional violation). By contrast, a civil action under Section 1983 (or a *Bivens* action if the potential defendants are federal officers) could result in monetary liability for the officers and would redress any racial discrimination by the law enforcement officers.

---

[1] The videos showing the defendants selling drugs have been filed under seal with the Court.

The government has found no federal case that expressly states that dismissal is an appropriate remedy for selective enforcement, as opposed to selective prosecution. *Cf. United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1261-66 (10th Cir. 2006) (discussing motion to dismiss based on selective enforcement but not considering whether dismissal is appropriate remedy for selective enforcement); *United States v. Barlow*, 310 F.3d 1007, 1010-11 (7th Cir. 2002) (discussing discovery in support of a selective enforcement motion to dismiss). Instead, the courts have primarily debated whether suppression of lawfully obtained evidence is an appropriate remedy for racial discrimination by law enforcement officers. *See United States v. Starks*, 769 F.3d 83, 90 n.6 (1st Cir. 2014) (noting debate over whether to apply suppression remedy and finding that First Circuit has not decided whether equal protection violation leads to suppression); *United States v. Chavez*, 281 F.3d 479, 486 (5th Cir. 2002) ("Neither the Supreme Court nor our court has ruled that there is a suppression remedy for violations of the Fourteenth Amendment's Equal Protection Clause."); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 711 (6th Cir. 1999) (Moore, J., concurring) (arguing for adoption of suppression remedy for selective enforcement claim). Here, the defendants have asserted that they intend to seek dismissal of the prosecutions against them based on selective enforcement, but even if they sought suppression of evidence that they engaged in drug dealing that claim should be rejected, for two reasons.

First, as several courts have noted, suppression is not an appropriate remedy for an equal protection violation. As the Sixth Circuit explained in *Nichols*, 512 F.3d at 794, "the exclusionary rule is typically applied as a remedy for Fourth Amendment violations." But, as the Ninth Circuit has made clear, an officer's subjective intent is irrelevant under the Fourth Amendment. *See United States v. Ibarra*, 345 F.3d 711, 714 (9th Cir. 2003); *see also Whren*, 517 U.S. at 813 (prior Supreme Court cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). For that reason, allowing suppression for an equal protection violation in the enforcement of criminal laws would impose a suppression remedy in an area usually governed by the Fourth Amendment and based on a consideration (the officers' subjective intent) that is irrelevant under the Fourth Amendment. The Court should not use the Equal Protection Clause to give the defendants relief that, the Supreme Court has said, is unavailable in identical circumstances under the Fourth Amendment. *See United States v. Nichols*, 512 F.3d at 794; *see also*

1   *United States v. Turrentine*, 2012 WL 729348, at \*3 (W.D. Okla. 2012) (suppression not a remedy for a

2   selective enforcement violation); *United States v. Barrett*, 2011 WL 4443432, at \*5 n.8 ("it is unlikely"

3   that a selective enforcement violation would result in suppression); *United States v. Foster*, 2008 WL

4   1927392, at \*5 (M.D. Ala. 2008) (court should not suppress evidence otherwise lawfully obtained for a

5   selective enforcement violation).

6        In the same vein, the Supreme Court has explained that "exclusion may not be premised on the

7   mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence" and that "but-for"

8   causality is only a necessary, not a sufficient, condition for suppression." *Hudson*, 547 U.S. at 592.

9   Here, that necessary condition is not satisfied, because there is no dispute that the officers observed the

10   defendants sell drugs and then arrested them. Any alleged racial discrimination by the officers could

11   only have come in targeting the defendants for prosecution, not in the gathering of evidence from

12   defendants who plainly violated the law. In light of the "costly toll upon truth-seeking and law

13   enforcement objectives," suppression is not warranted. *Hudson*, 547 U.S. at 591; *see also Herring v.*

14   *United States*, 555 U.S. 135, 141 (2009) ("[T]he [exclusionary] rule's costly toll upon truth-seeking and

15   law enforcement objectives presents a high obstacle for those urging [its] application.") (internal

16   quotation marks and citation omitted).

17        Second, even if available as a remedy for an equal protection violation, suppression is not a

18   remedy for a claim of systematic racial discrimination; instead, each defendant would have to show that

19   he or she was the subject of selective enforcement to obtain suppression of the evidence against that

20   defendant. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (to show purposeful discrimination,

21   defendant must prove that "the decisionmakers in *his* case acted with discriminatory purpose")

22   (emphasis in original); *see also United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) (officer

23   must act "solely" because of race to violate equal protection); *United States v. Avery*, 137 F.3d 343, 353-

24   54 (6th Cir. 1997) (same). Accordingly, selective enforcement has no place in the defendants' effort to

25   obtain relief because, they apparently will claim, Operation Safe Schools as a whole was a racially

26   motivated program. Moreover, if selective enforcement will not support suppression of evidence, it also

27   will not support the more draconian and disruptive remedy of dismissal of an indictment.

28        Finally, this Court should rule on the government's motion before the defendants seek to gather

1   additional information from the SFPD and DEA.  The defendants have recently sought more than 300

2   closed files from the San Francisco Police Department and sought expedited treatment for a FOIA action

3   against DEA.  In the United States' view, to the extent that the defendants seek to show selective

4   enforcement with the evidence they are attempting to gather, they are putting the cart before the horse.

5   The defendants cannot show that they have a viable theory of selective enforcement in a criminal case,

6   and therefore they should not be able to pursue the costly and burdensome information gathering that

7   they seek to undertake.

8   **II.      No selective prosecution occurred.**

9          **A.      The declarations from the AUSAs**

10          With this motion, the United States has filed a declaration from (1) the two supervisory AUSAs

11  who approved prosecution of all the defendants claiming racial discrimination in Operation Safe Schools

12  (except Ivan Speed); (2) the two AUSAs handling the prosecutions who made recommendations to the

13  supervisors (again, except for Ivan Speed); and (3) the AUSA who prosecuted Ivan Speed.[2]

14          As set forth in the declaration of the prosecutor who initiated Operation Safe Schools and

15  prosecuted Speed, Operation Safe Schools grew out of that AUSA's long-term familiarity with the

16  Tenderloin, its residents, and the drug dealing that occurred there.  The AUSA initiated Operation Safe

17  Schools after learning of the poverty in the Tenderloin, the number of children who lived there, and the

18  amount of crime in that neighborhood.  That AUSA did not consider Speed's race in determining

19  whether to prosecute him and did not know of the race of most of the defendants prosecuted in

20  Operation Safe Schools.  Instead, the AUSA told the law enforcement agencies that investigated

21  Operation Safe Schools "to target recidivist, repeat offenders who were selling drugs near schools" and

22  to concentrate on "the criminal history of the defendants."  Declaration of S. Waqar Hasib ¶ 6.

23          As the declarations state, the AUSAs handling the current Operation Safe Schools made

24  independent charging decisions untainted by race as to whether to prosecute different defendants.

25  Tellingly, neither AUSA was aware of the other AUSA's charging decisions when they decided to

26  recommend prosecution of any of the charged defendants.  In any event, both AUSAs have flatly stated

27

28          [2] The AUSA's supervisor has passed away since the first Operation Safe Schools was authorized.

1   that race did not affect her or his decision in any manner to prosecute the defendants.  In addition, as the

2   declarations make clear, one of the supervisory AUSAs (AUSA Kaleba) who made the decision to

3   approve several of the current Operation Safe Schools prosecutions did not see the videos before

4   authorizing the prosecutions, and did not know the race of the defendants being charged before

5   authorizing the prosecutions.  The other supervisory AUSA (AUSA Barry) saw two sets of the videos,

6   but did not know the race of any defendant before authorizing that defendant's prosecution.  Again, both

7   of the supervisory AUSAs who authorized the prosecution of the defendants flatly denied that race was a

8   factor in their decision to authorize any of the Operation Safe Schools prosecutions.  Moreover, the

9   supervisory AUSAs had previously instructed the law enforcement officers that the United States sought

10   to prosecute "persistent, recidivist, and repeat offenders selling drugs near schools in the Tenderloin

11   neighborhood of San Francisco."  Declaration of Kevin Barry at ¶ 6; Declaration of Daniel Kaleba at

12   ¶ 6.

13         In sum, as the declarations demonstrate, the decision to charge each defendant in Operation Safe

14   Schools was based on the nature and number of the defendant's prior offenses, the proximity of the

15   defendant's drug sales to a school, the number of times each defendant sold drugs in and around the

16   Tenderloin, and the strength of the evidence against each defendant.  Race did not enter into the

17   decision.

18         **B.      The standards governing selective prosecution claims**

19         "A selective-prosecution claim is not a defense on the merits of the criminal charge itself, but an

20   independent assertion that the prosecutor has brought the charge for reasons forbidden by the

21   Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  To show selective prosecution,

22   the defendants must meet a "demanding" or "rigorous" standard.  *Armstrong*, 517 U.S. at 463, 468; *see*

23   *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007) (standard "is particularly demanding").

24   That is because "[a] selective-prosecution claim asks a court to exercise judicial power over a 'special

25   province' of the Executive," the "broad discretion" that the government has to enforce criminal law.

26   *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)); *accord Wayte v.*

27   *United States*, 470 U.S. 598, 607 (1985); *see United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th

28   Cir. 2003) ("We must exercise a high degree of deference to the decision of prosecuting authorities to

1    bring charges, because the Constitution assigns that decision to the executive branch of government.").

2    For this reason, prosecutorial decisions are supported by a presumption of regularity.  *United States v.*

3    *Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926).  In *Wayte v. United States*, for example, the Court

4    noted that a court should not second guess a decision to prosecute because it may rest on "[s]uch factors

5    as the strength of the case, the prosecution's general deterrence value, the Government's enforcement

6    priorities, and the case's relationship to the Government's overall enforcement plan."  470 U.S. at 607

7    (1985).  As long as the prosecutor has probable cause to believe that the accused committed a crime,

8    "the decision whether or not to prosecute . . . generally rests entirely in [the prosecutor's] discretion."

9    *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

10       Accordingly, the defendants must show that prosecution is "'directed so exclusively against a

11   particular class of persons' . . . that the system of prosecution amounts to 'a practical denial' of equal

12   protection of the law."  *Armstrong*, 517 U.S. at 464-65 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373

13   (1886)).  Put another way, to "dispel the presumption that a prosecutor has not violated equal protection,

14   a criminal defendant must present 'clear evidence to the contrary.'"  *Armstrong*, 517 U.S. at 465

15   (quoting *Chemical Foundation*, 272 U.S. at 14-15).  That "clear evidence" must include evidence "of

16   both discriminatory effect and discriminatory intent."  *United States v. Bass*, 536 U.S. 862, 863 (2002)

17   (per curiam); *see Armstrong*, 517 U.S. at 465 ("claimant must demonstrate that the federal prosecutorial

18   policy had a discriminatory effect and that it was motivated by a discriminatory purpose").  To show a

19   discriminatory effect, "the claimant must show that similarly situated individuals of a different race were

20   not prosecuted."  *Armstrong*, 517 U.S. at 465.

21       To prove discriminatory purpose, a defendant must show that the government undertook a

22   particular course of conduct "at least in part because of . . . its adverse effects upon an identifiable

23   group."  *Wayte*, 470 U.S. at 610.  As the Supreme Court has held, "the conscious exercise of some

24   selectivity in enforcement is not in itself a federal constitutional violation."  *Oyler v. Boles,* 368 U.S.

25   448, 456 (1962).  For example, awareness of the consequences of prosecution is not sufficient to show

26   discriminatory intent, *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997); nor is a prosecutor's

27   knowledge of the difference in penalties in state and federal court for a given offense.  *United States v.*

28   *Nelson*, 137 F.3d 1094, 1106 (9th Cir. 1998).  Finally, "[t]he justifications for a rigorous standard for the

UNITED STATES' MOTION
CASE NO. 13-CR-753 EMC                                    8

1   elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery

2   in aid of such a claim." *Armstrong*, 517 U.S. at 468.[3]

3   **C.   Application of the standards**

4   The defendants cannot show that the prosecutors charged the defendants "at least in part because

5   of . . . its adverse effects upon" African-Americans.  To show such a purpose, they would have to

6   establish that the prosecutors who obtained indictments from the grand jury did so, at least in part,

7   because the defendants were African-American.  To do so, the defendants must not only overcome the

8   "presumption of regularity" that governs selective prosecution claims, they must show that the AUSAs

9   lied in their declarations when they swore that the defendants' race did not enter into the charging

10  decision.  In *Turner*, the court of appeals rejected a selective prosecution claim in which the government

11  introduced affidavits from the prosecutors, noting that the district court had not "explained why the

12  affidavits were not credible."  104 F.3d at 1185.  The *Turner* court noted that by introducing the

13  affidavits, the government had provided "precisely" the information that the district court needed to

14  decide a selective prosecution claim.  Here, as in *Turner*, there is not one scintilla of evidence to support

15  the conclusion that the prosecutors lied.

16  Defendants may counter, as they argued in their Joint Case Management Statement (at 7), that,

17  regardless of the AUSAs' declarations, they can show discriminatory effect "by statistical evidence."

18  The short answer to this argument is that the court of appeals has rejected it.  In *Belmontes v. Brown*,

19  414 F.3d 1094 (9th Cir. 2005), *reversed on other grounds*, *Ayers v. Belmontes*, 549 U.S. 7 (2006), the

20  court found that "even if [the defendant's] statistics were sufficient to raise a prima facie case of

21  purposeful discrimination, the State has successfully rebutted it by offering the prosecutor's legitimate

22  race-neutral explanation for its actions."  *Id*. at 1129.  Here, the declarations submitted by the AUSAs

23

24  _____
    [3]  In Defendants' Joint Case Management Statement (at 4), they assert that "the Supreme Court

25  never stated that a defendant needs to produce 'some evidence' of the discriminatory intent element to
    obtain discovery of a selective prosecution claim."  That assertion is both wrong and irrelevant.  In

26  *Armstrong*, in considering "the showing necessary to obtain discovery" of a selective prosecution claim,
    the Court specifically endorsed the view of the courts of appeals that a defendant must produce "some

27  evidence tending to show the existence of the essential elements of the defense."  *Armstrong*, 517 U.S.
    at 468 (internal quotation marks and citation omitted).  In addition, as set forth in the text, the defendants

28  cannot overcome the government's showing by affidavit that the prosecutors did not harbor
    discriminatory intent.  Accordingly, discovery is not necessary.

1   provide a race-neutral explanation for the prosecutions, and no statistical showing can overcome the

2   United States' direct evidence that it acted without discriminatory intent.

3       Nor does the defendants' Joint Case Management Statement provide much support for their

4   claim.  The defendants rely (at 7) on a civil case involving selective enforcement (*Chavez v. Illinois*

5   *State Police*, 251 F.3d 612 (7th Cir. 2011)), a criminal case involving selective enforcement that notes

6   that statistical evidence is "rarely sufficient" to show intent (*United States v. Duque-Nava*, 315 F. Supp.

7   2d 1144, 1156 (D. Kan. 2004)), a criminal case that mentions in passing and in dicta that discovery on

8   selective enforcement "has been ordered in certain other pending stash-house cases" (*United States v.*

9   *Davis*, 766 F.3d 722, 731-32 (7th Cir. 2014), and a 1999 decision from a magistrate judge (*United States*

10  *v. Tuitt*, 68 F. Supp. 2d 4 (D. Mass. 1999).  Only *Tuitt* supports the defendants' claim, and in that case,

11  the magistrate judge specifically stated that the Ninth Circuit in *Turner* had taken a different approach to

12  discovery in selective prosecution cases.  *Tuitt*, 68 F. Supp. 2d at 16-17.  In addition, none of the cases

13  (except *Tuitt*) involved declarations from the AUSAs that explained that race did not play a part in the

14  prosecution decision.[4]  The defendants' argument that statistical evidence may overcome declaration

15  essentially seeks to show that the AUSAs are both racists and perjurers.  Such a finding not only

16  contravenes the presumption of regularity that attends prosecutorial decision-making, it is wholly

17  without evidentiary or legal support.  And, as *Belmontes* makes clear, it is contrary to the case law.

18      The defendants may also claim that any racial discrimination on the part of the law enforcement

19  officers involved in their arrest should be attributed to the prosecution.  Again, that claim is contrary to

20  case law.  In *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997), the court refused to "impute

21  the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution."

22  Similarly, in *United States v. Spears*, 159 F.3d 1081, 1087 (7th Cir. 1998), the court made clear that "it

23  is well settled that the actions of an investigating agency will not be imputed to a federal prosecutor."

24

25      [4]  The government also believes *Tuitt* is wrongly decided in rejecting affidavits proffered by the

26  AUSAs that justified the defendant's prosecution but "fail[ed] to identify" a non-discriminatory policy
    or practice.  *Tuitt*, 68 F. Supp. 2d at 16-17.  If, as the AUSAs stated under oath, they did not act in a

27  racially discriminatory manner toward the defendant moving for discovery, then any non-discriminatory
    policy in the United States Attorney's Office is irrelevant.  In any event, the declarations filed in this

28  case set forth the criteria that prosecutors used in deciding to prosecute Operation Safe Schools
    defendants.

1  *See also United States v. Monsoor*, 77 F.3d 1031, 1035, (7th Cir. 1996) ("the animus of a referring

2  agency is not, without more, imputed to federal prosecutors").  More recently, a court in this district

3  rejected a selective prosecution claim based on the actions of the law enforcement officers, finding that

4  "'the proper focus in discriminatory prosecution cases is on the ultimate decision-maker.'"  *United*

5  *States v. Park*, 2006 WL 3085701, at *1 (N.D. Cal. 2006) (Illston, J.) (quoting *United States v. Gomez-*

6  *Lopez,* 62 F.3d 304, 306 (9th Cir.1995)).  In this case, all of the prosecutors averred that they made the

7  decision to prosecute the defendants without regard to the defendants' race, and there is no evidence that

8  any alleged racial discrimination on behalf of the law enforcement agencies should be imputed to them.

9         The government believes that the defendants cannot meet either prong of a successful selective

10  prosecution claim for discovery or on the merits.  But because they assuredly cannot show that the

11  prosecutors acted in a racially discriminatory manner when they brought charges against the defendants,

12  any motion alleging selective prosecution would be denied.  Because the defendants have failed to make

13  any showing of discriminatory intent, they are not entitled to discovery on that claim.

14         It is also worth noting that the defendants' effort to show racial discrimination overlooks the

15  point of Operation Safe Schools.  As AUSA Hasib's declaration makes clear (and as even a quick walk

16  through the neighborhood reveals), the Tenderloin is overrun with drug dealers.  Those dealers commute

17  into the Tenderloin, and sell drugs near schools and parks where children gather.  In fact, it is not

18  unusual to see drug deals within one block of this building.  Operation Safe Schools is an effort to make

19  the streets of the Tenderloin safer for children.  Especially in light of the government's showing that the

20  prosecutors were not animated by racial discrimination, the defendants claim that the government

21  targeted only African-Americans in Operation Safe Schools does a great disservice to the people and

22  children of the Tenderloin.  *See United States v. Turner*, 104 F.3d at 1185 (court must not allow

23  selective prosecution claim to prevent law enforcement that protects urban minorities).

24                                          **CONCLUSION**

25         The Court should hold that a claim of selective enforcement by law enforcement officers can

26  only be brought in a civil rights action and that any motion alleging selective prosecution is foreclosed

27  by direct evidence that none of the prosecutors who authorized the prosecution had discriminatory

28  intent.

UNITED STATES' MOTION
CASE NO. 13-CR-753 EMC                    11

1    DATED:        July 16, 2015                          Respectfully submitted,

2                                                         MELINDA HAAG
                                                          United States Attorney
3

4                                                                   /s/
                                                         _____
5                                                        LLOYD FARNHAM
                                                         SARAH K. HAWKINS
6                                                        J. DOUGLAS WILSON
                                                         Assistant United States Attorneys
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28